**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JOSEPH ANTHONY SAFRANY,

      Petitioner,

v.                                 Case No. 8:15-cv-1822-T-33EAJ

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

      Petitioner Joseph Anthony Safrany, a state of Florida inmate proceeding *pro se*, filed

a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1).  He challenges his

convictions entered by the Circuit Court for the Thirteenth Judicial Circuit, Hillsborough

County, Florida.  Respondent filed a response (Doc. 14), which raises no challenge to the

timeliness of the petition.  Safrany filed a reply (Doc. 20).  Upon review, the petition must

be denied.

## PROCEDURAL HISTORY

      Safrany was charged with three counts of DUI manslaughter (counts one, two, and

three), three counts of vehicular homicide (counts four, five, and six), one count of DUI with

serious bodily injury (count seven), and three counts of DUI with property damage or

personal injury (counts eight, nine, and ten).  (Doc. 19, Ex. 1, pp. 27-35.)  Upon conviction

at trial, the state court sentenced him to life in prison on counts one through three, five

years in prison on count seven, and time served on counts eight, nine, and ten.  (Doc. 19,

Ex. 1, pp. 73-81.)[1]   The convictions and sentences were *per curiam* affirmed on direct appeal. (Doc. 19, Ex. 6.)  Safrany's motion for rehearing was denied. (Doc. 19, Exs. 7, 8.)

Safrany filed a state habeas petition alleging ineffective assistance of appellate counsel.   (Doc. 19, Ex. 10.)   The state appellate court denied the petition in part but granted relief on Safrany's claim that appellate counsel was ineffective for failing to argue that his convictions for DUI manslaughter and vehicular homicide violated double jeopardy. The state appellate court reversed the vehicular homicide convictions, and remanded to the trial court with directions to strike the convictions.  *Safrany v. State*, 895 So.2d 1145 (Fla. 2d DCA 2005).

Safrany filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Doc. 19, Ex. 16c, pp. 576-776.)  He obtained relief on one ground.  As a result, the trial court resentenced Safrany to consecutive terms of 15 years in prison for counts one, two, and three, and to five years in prison on count seven.  (Doc. 19, Ex. 16f, pp. 132-33; Ex. 24.)

The state appellate court reversed and remanded, finding that Safrany should receive additional jail credit and that the written sentence for count seven did not accurately reflect the court's oral pronouncement of sentence.  *Safrany v. State*, 98 So.3d 192 (Fla. 2d DCA 2012).  Safrany subsequently filed a motion to correct illegal sentence under Rule 3.800(a) in 2013.  (Doc. 19, Ex. 25.)  The trial court summarily denied this motion.  (Doc. 19, Ex. 26.)   The state appellate court entered a *per curiam* affirmance with citations. *Safrany v. State*, 174 So.3d 1006 (Fla. 2d DCA 2015).  It denied Safrany's motion for

---

[1] The court did not impose sentence on counts four, five, and six.  (Doc. 19, Ex. 1, p. 73.)

rehearing.  (Doc. 19, Exs. 30, 31.)

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000).  Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).  Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a

federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . .") (citations omitted).

In a *per curiam* decision without a written opinion, the state appellate court affirmed the denial of Safrany's motion to correct illegal sentence.  The state appellate court's *per curiam* decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom. Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court. *Pinholster,* 563 U.S. at 180-81. Safrany bears the burden of overcoming by clear and convincing evidence a state court factual determination.  "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

## DISCUSSION

Safrany raises three claims that he presented to the state court in his 2013 motion to correct illegal sentence.  The state court's order summarily denying this motion provided, "[a]fter considering Defendant's Motion, the court file, and the record, the Court finds that Defendant is not entitled to relief."  (Doc. 19, Ex. 26.) The state appellate court *per curiam* affirmed, citing numerous Florida decisions.

**Ground One**

Safrany claims that the state court violated his Sixth and Fourteenth Amendment rights by imposing a departure sentence based on factors not determined by the jury. The Criminal Punishment Code scoresheet filed on the date of Safrany's 2010 resentencing reflects a "lowest permissible prison sentence" of 413.1 months, and a "maximum sentence" of 50 years in prison.  (Doc. 19, Ex. 25, pp. 2718-19.)  Safrany argues:

> [T]he imposition of his overall (50) fifty year term of imprisonment continues to violate his 6th and 14th Amendment Rights under the U.S. Constitution to have those facts that were relied upon to justify the trial courts imposition of a sentence in excess of the 'prescribed statutory maximum', submitted to a jury and proven beyond a reasonable doubt.

(Doc. 1, p. 10.)   He states that his sentence "must have been the result of some determination by the State Circuit Court of extenuating or aggravating factors."  (Id., p. 8.)

*Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely v. Washington*, 542 U.S. 296, 303 (2004) clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."

Safrany fails to show entitlement to relief.  He does not establish that the trial court made any additional factual findings to impose his sentence.  Safrany contends that in accordance with *Blakely*, the maximum term to which he could be sentenced was 413.1 months in prison, which his scoresheet lists as the "lowest permissible prison sentence." In rejecting his collateral appeal, the state appellate court cited *Pruitt v. State*, 801 So.2d 143 (4th DCA 2001).   *Pruitt* provides that the sentencing range under the Criminal

Punishment Code is "the lowest permissible sentence up to and including the statutory maximum, as defined in s. 775.082, for the primary offense and any additional offenses before the court for sentencing." *Id.* at 144 (quoting § 921.0024(2), Fla. Stat. (1999)).  The state appellate court also cited *Arrowood v. State*, 843 So.2d 940 (Fla. 1st DCA 2003), which states that in Florida, for purposes of *Apprendi*, the relevant statutory maximum is found in § 775.082, Fla. Stat.[2]

The interpretation of Florida's sentencing laws is a matter of state law to which a federal habeas court must defer.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus.") The state appellate court cited Florida decisions providing that the greatest term to which a defendant can be sentenced in accordance with the Criminal Punishment Code is the statutory maximum found in § 775.082, Fla. Stat.  Safrany was sentenced for three second degree felonies and one third degree felony.  A second degree felony is punishable by a term of imprisonment not exceeding fifteen years.   § 775.082(3)(d), Fla. Stat.  A third degree felony is punishable by a term of imprisonment not exceeding five years. § 775.082(3)(e), Fla. Stat.  The Criminal Punishment Code permits consecutive sentences for convictions arising out of the same criminal episode.  *Pruitt*, 802 So.2d at 144.[3]

Safrany has not established that the state appellate court's decision was contrary to, or an unreasonable application of, controlling Supreme Court precedent.  Safrany is not

---

[2] *See also* § 921.002(1)(g), Fla. Stat. (under the Criminal Punishment Code, "[t]he trial court judge may impose a sentence up to and including the statutory maximum for any offense.").

[3]  The charges in this case originated from one car crash that resulted in the deaths of three people and injury to a fourth person.

entitled to relief on Ground One.

**Ground Two**

In Ground Two, Safrany alleges that the scoresheet's inclusion of victim injury points for death violated his Sixth and Fourteenth Amendment rights because the facts "related to the purported 'injury to the victims'" were not determined by a jury. (Doc. 1, p. 13.) He argues:

> [T]he imposition of each (15) fifteen year term of incarceration imposed for each count of DUI Manslaughter continues to violate his 6th and 14th Amendment Rights under the U.S. Constitution when failing to have those facts that were relied upon to justify the assessment of points assigned for victim injury, submitted to a jury and proven beyond a reasonable doubt.

(Doc. 1, pp. 15-16.)

For each offense of DUI manslaughter, the State was required to show that Safrany caused or contributed to the cause of death of the victim. (Doc.19, Ex. 1, pp. 101-02; Ex. 1d, p. 445.) Thus, by convicting him as charged, the jury determined that each victim was dead. Accordingly, Safrany does not establish that the victim injury points for death were imposed on the basis of facts not determined by a jury. *See Arrowood*, 843 So.2d at 941 ("The jury's findings of DUI manslaughter and DUI serious bodily injury support the imposition of the death and severe victim injury points.").[4] Safrany has not shown that the state appellate court's rejection of his claim was contrary to or an unreasonable application of controlling Supreme Court precedent. He is not entitled to relief on Ground Two.

**Ground Three**

---

[4] Furthermore, Safrany fails to show that the victim injury points for death affected the maximum permissible sentence on his Criminal Punishment Code scoresheet. As addressed in Ground One, the greatest punishment under the Criminal Punishment Code is the maximum sentence contained in § 775.082, Fla. Stat.

Safrany alleges a double jeopardy violation. "The Double Jeopardy Clause 'protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'" *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

Safrany claims that the assessment of victim injury points on his scoresheet violates double jeopardy because victim injury points for death duplicated points assessed for the DUI manslaughter offenses. Specifically, Safrany claims that "to be charged with 3 counts of DUI Manslaughter with assigned point totals of 148, then assigned an additional 360 points for 'Death' was repetitive punishment for the same offense, violative of double jeopardy standards [and] unconstitutional." (Doc. 1, p. 19.)[5]

Safrany argues he was punished twice for the same offenses. The protection against cumulative punishments "is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984). Accordingly, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). *See Albernaz v. United States*, 450 U.S. 333, 344 (1981) ("[T]he question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed. Where [the legislature]

---

[5]The scoresheet reflects that one count of DUI manslaughter was deemed the primary offense and assessed 74 points, while the other two counts of DUI manslaughter were deemed additional offenses and assessed 37 points each. (Doc. 19, Ex. 25, p. 2718.) Additionally, 120 points on each count, for a total of 360 points, were assessed for death under the victim injury category. (Id.)

intended . . . to impose multiple punishments, imposition of such sentences does not violate the Constitution."); *Brown v. Ohio*, 432 U.S. 161, 165 (1977) ("Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.").

In affirming the denial of collateral relief, the state appellate court cited *Wendt v. State*, 711 So.2d 1166 (Fla. 2d DCA 1998) (en banc).   *Wendt* rejected a claim that including victim injury points on the scoresheet in a DUI manslaughter and DUI serious bodily injury case twice punished the defendant for the same conduct because the punishment for the offenses themselves took into account victim injury.  *Wendt* announced that the Second District Court of Appeal would follow *Martinez v. State*, 692 So.2d 199 (Fla. 3d DCA 1997), which the appellate court also cited in deciding Safrany's appeal.

*Martinez* rejected a claim that death of the victim cannot be scored on the scoresheet when death is an element of the offense.  692 So.2d at 202.  *Martinez* noted that § 921.0014, Fla. Stat., which set forth a sentencing guidelines worksheet, specifically called for scoring injury in addition to scoring the offenses.  *Id.*  Although these guidelines preceded the 1998 Criminal Punishment Code applicable to Safrany's resentencing,[6] *Martinez*'s reasoning supports the rejection of Safrany's claim.  In setting out the Criminal Punishment Code scoresheet, § 921.0024, Fla. Stat., similarly provides that the offense and victim injury are both to be scored in calculating the Criminal Punishment Code

---

[6] The Criminal Punishment Code applies to all felony offenses other than capital felonies committed on or after October 1, 1998.  § 921.002, Fla. Stat.  Safrany's offenses occurred on April 7, 2000.  (Doc. 19, Ex. 1, pp. 27-35.)

scoresheet. Additionally, Florida Rule of Criminal Procedure 3.704, which "implements the 1998 Criminal Punishment Code, in compliance with chapter 921, Florida Statutes," provides:

> "Victim injury" is scored for physical injury or death suffered by a person as a direct result of any offense pending before the court for sentencing. . . . *Victim injury must be scored for each victim physically injured and for each offense resulting in physical injury* whether there are one or more victims. . . . .
>
> "Subtotal sentence points" are *the sum of the primary offense points, the total additional offense points, the total victim injury points*, the total prior record points, any legal status points, community sanction points, prior serious felony points, prior capital felony points, and points for possession of a firearm or semiautomatic weapon.

Fla. R. Crim. P. 3.704(d)(9), (18) (emphasis added).

The state court's decision reflects that, as a matter of state law, points can be assessed for DUI manslaughter convictions and for victim injury points for death under the Criminal Punishment Code. Safrany fails to show that the state court's rejection of his claim was contrary to or an unreasonable application of controlling Supreme Court precedent. Ground Three warrants no relief.

Accordingly, it is

**ORDERED** that Safrany's petition for writ of habeas corpus (Doc. 1) is **DENIED**. The Clerk is directed to enter judgment against Safrany and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

It is further **ORDERED** that Safrany is not entitled to a certificate of appealability (COA). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must

first issue a COA.  *Id.*  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* at § 2253(c)(2).  To make such a showing, Safrany "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  Safrany has not made the requisite showing in these circumstances.  Finally, because Safrany is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

     **ORDERED** at Tampa, Florida, on March 30, 2016.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Joseph Anthony Safrany
Counsel of Record